IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-2145-JLK

**SHAUN HUFFMAN,**
**HENRY PEREZ,**
**WILLIAM HARDING, IV, and**
**EVERETT BENNETT,**

      Plaintiffs,

v.

**AMERICAN PROCESS PIPING, INC., individually and d/b/a AMERICAN PROCESS PIPING;**
**PAMELA GRAVES, individually and d/b/a AMERICAN PROCESS PIPING; and**
**CHARLES SMITH, individually and d/b/a AMERICAN PROCESS PIPING,**

      Defendants.

---

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

---

Kane, J.

Four former employees of American Process Piping, Inc. ("APP"), d/b/a American Process Piping, bring this action under the Fair Labor Standards Act ("FLSA") against APP and two individuals, Pamela Graves and Charles Smith, each individually and d/b/a American Process Piping. On March 4, 2015, the Court held an evidentiary hearing on Plaintiffs' Motion for Default Judgment (Doc. 20). After careful consideration, and for reasons that follow, the Court makes the following findings of fact and conclusions of law and orders judgment entered for Plaintiffs.

The Court finds that venue is proper. The Court has jurisdiction under the FLSA and jurisdiction over the Defendants in this case because they have engaged in significant activity relevant to this case within the State of Colorado, and Plaintiffs have been adversely affected by the actions of Defendants, both here in Colorado and elsewhere.

On October 10, 2014, Plaintiffs served their Original Complaint, along with a copy of the Summonses issued herein, via personal service by an authorized process server on Defendants

Pamela Graves, Charles Smith, and Charles Smith as agent for service of process for American Process Piping, Inc.  Defendants have failed to file any responsive pleading within the time allowed by the Federal Rules of Civil Procedure. Plaintiffs have presented evidence which establishes a basis for Plaintiffs' claims relating to violation of the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA") and liquidated damages.

Defendants have owned and operated a welding business engaged in interstate commerce which utilized goods that moved in interstate commerce.  Defendants were at all relevant times engaged in commerce as defined in 29 U.S.C. § 203(r) and § 203(s).  During the relevant time period the annual gross revenues of Defendant exceeded $500,000.00 per annum.

Defendants were Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(d), for all relevant time periods. Smith and Graves co-own Defendant American Process Piping. While employed by Defendants, Plaintiffs worked in several states.  Several Plaintiffs worked in Colorado for up to three (3) months in 2013.

Defendant Smith and Defendant Graves manage and control the operation of the business and dictate the employment policies of the business, including but not limited to the decision to classify Plaintiffs as independent contractors.  Smith and Graves own, manage and control American Process Piping.

All Plaintiffs reported to Smith during the course of their employment. Smith was physically present on many job sites, directing the work, and making decisions about how work was done, who did the work, etc.  Smith hired and fired Plaintiffs.  Smith was, at all times relevant, Plaintiffs' employer as defined by the FLSA, 29 U.S.C. § 203(d).  Smith had operational control of the corporate defendant's day-to-day functions.

Plaintiffs reported their hours to Graves during the course of their employment.  Graves was in charge of record keeping and payroll for Defendant American Process Piping insofar as

the records and pay related to Plaintiffs.  Graves was, at all times relevant, Plaintiffs' employer as defined by the FLSA, 29 U.S.C. § 203(d).  At all relevant times Graves had operational control of the corporate defendant's day-to-day functions.

Huffman worked as a welder for Defendants from December of 2012 until January of 2014.  Huffman worked for Defendants in Colorado, New York, Alabama, Iowa, and California during the time relevant to this case.  Perez worked as a welder for Defendants for six weeks beginning in July of 2013.  Perez worked for Defendants in California during the time relevant to this case. Harding worked as a welder for Defendants for six (6) weeks beginning in May of 2013.  Harding worked for Defendants in New York and Minnesota during the time relevant to this case.  Bennett worked as a welder for Defendants from February of 2013 until January of 2014.  Bennett worked for Defendants in Colorado, New York, Alabama, Iowa and California during the time relevant to this case.  All four Plaintiffs typically worked five (5) to seven (7) days per week, averaging over forty (40) hours per week that they each worked, almost always working overtime each work week.

Huffman worked for Defendants over a year, Bennett worked for Defendants just under a year, and Perez and Harding worked for Defendants for six weeks.  The varied times Plaintiffs worked for Defendants range from approximately a month and half to over a year.  This variability is characteristic of the industry and does not indicate that Plaintiffs were anything other than employees.

Huffman was initially paid (and/or to be paid) $30.00 an hour.  In August of 2013, his pay increased to $35.00 an hour when Defendants made him a welder/supervisor.  Perez was told by Defendants that his hourly rate was $30.00.  Harding was paid (and/or to be paid) $55.00 an hour.  Bennett was paid (and/or to be paid) $30.00 an hour.

All four Plaintiffs were never paid overtime premiums.  Huffman received no pay for the last two weeks worked for Defendants as well as no pay for his travel time to and from the last

job. Perez received no pay for the last three weeks worked for Defendants. Harding received no pay for the last few weeks worked for Defendants in Minnesota, as well as no pay for his travel time to and from the last job. Bennett also received no pay for the last two weeks worked for Defendants, as well as no pay for his travel time to and from the last job.

The facts in this case show that Plaintiffs were employees of Defendants, not independent contractors. American Process Piping, together with the individual employer-defendants, provided the tools to Plaintiffs for their work, directed the specifics of the work, and was heavily invested in the welding jobs. Defendants informed Plaintiffs when and where they were to provide their labor, and the highest amount of profit that Plaintiffs could receive from the work was their wages. Plaintiffs had no negotiation with their pay as they did not bid jobs. They were told when to come to work and when to leave work. If they were late, they would be in trouble with Defendants. Further, they did not have discretion in how to do their job, but instead were given plans to follow. Defendants exercised significant control over Plaintiffs in these meaningful aspects of the working relationship.

Plaintiffs did not bear the financial risks or enjoy the opportunities of independent business operators. Defendants had far more to gain or lose from the jobs on which it had Plaintiffs work: Plaintiffs did not contract with Defendants' customers, and their total exposure was only that Defendants might not, as was often the case, pay them in full for their labor. Plaintiffs had no stake in the profit or loss incurred by the business. Instead, Plaintiffs reported their hours to Graves during the course of their employment. They filled out and turned in time sheets and were to be paid for all hours worked whether the job made a profit or not. Graves was in charge of record keeping and payroll for Defendant American Process Piping insofar as the records and pay related to Plaintiffs. Any investment by Plaintiffs in their work was minor compared to obvious significant investment by Defendants in running their business. Therefore,

the factor of opportunities for profit or loss indicate that Plaintiffs were employees and not independent contractors.

Defendants set the rules and had complete control over the venue, and Plaintiffs had to obey these rules or risk everything, including loss of their job.  This is the very hallmark of the economic dependence and control of an employer-employee relationship.  The work performed by Plaintiffs was an integral part of Defendants' business.  The welding service Plaintiffs provided is the service that Defendants are in the business of providing.  Plaintiffs' work was an integral part of Defendants' regular business of providing welding services.  Plaintiffs were not running separate, independent enterprises at the locations at which Defendants told Plaintiffs to work; the welding services Plaintiffs provided were Defendants' business.

Plaintiffs were economically dependent on Defendants.  Defendants took all the economic risks, kept all the resulting profits, and controlled the atmosphere in which Plaintiffs worked.  Defendants hired Plaintiffs to weld at different locations for the Defendants' benefit.  The FLSA does not permit an employer to profit from workers' labor in that manner without paying proper wages.  Plaintiffs were intentionally and improperly classified by Defendants as independent contractors, but in reality they were employees of Defendants subject to the protections of the FLSA.

As Smith and Graves exercised operational control over significant aspects of American Process Piping's business including, among other things, the hiring, firing, directing the work of Plaintiffs, having Plaintiffs report to them, and overseeing the business on a daily basis, they each were Plaintiffs' employer within the meaning of the FLSA and are jointly and severally liable with Defendant American Process Piping for damages resulting from violations of the FLSA.

Defendants did not pay Plaintiffs at a rate of one and one-half times their regular rate for all hours worked over forty (40) hours per week.  Additionally, Defendants failed to pay Plaintiffs any money whatsoever for the final weeks of their employment, during which period Plaintiffs

worked more than forty hours in a week.  Because Defendants violated the minimum wage and overtime provisions of the FLSA, Plaintiffs are entitled to damages for all unpaid overtime compensation and minimum wages.  Because Defendants failed to meet their burden of proving that they acted in objective and subjective good faith, Plaintiffs are also awarded liquidated damages equal to any amount of unpaid minimum and overtime awarded.

Specifically, the Court finds:

- Each Plaintiff was an employee of each Defendant. Plaintiffs were not independent contractors, nor were they management employees, but they were to be paid and should have been paid as wage-earners on an hourly basis with overtime.
- All three Defendants are covered by the FLSA.
- Plaintiffs have provided proof demonstrating that travel time to and from their last jobs constituted an integral and indispensable part of their principal activities.
- Plaintiffs have provided proof of their uncompensated hours, and they are entitled to damage in the amounts prayed for and testified to, including Mr. Perez, whose affidavit was admitted into evidence.
    - Huffman on average worked approximately 71 hours a week. He was paid for 1,612 hours paid at his regular rate, not overtime rate for the years 2012-2013; this consisted of 976.5 overtime hours before July 31, 2013; and 635.5 overtime hours after August 1, 2013. His final two weeks hours that he was not paid for consisted of 80 regular hours and 67 overtime hours. His unpaid overtime and regular wages total $32,086.25.  He is entitled to this amount liquidated, which is $64,172.50.
    - Bennett on average worked approximately 69 hours a week. He was paid for 1,189 hours at his regular rate, not overtime rate for the year 2013.  His final two weeks hours that he was not paid for consisted of 80 regular hours and 67

   overtime hours. His unpaid overtime and regular wages total $23,250.00. He is entitled to this amount liquidated, which is $46,500.00.

   o   Harding was paid for 82.5 hours at his regular rate, not overtime rate. His final three weeks hours that he was not paid for consisted of 85 regular hours and 71 overtime hours. His unpaid overtime and regular wages total $12,801.25. He is entitled to this amount liquidated, which is $25,602.50.

   o   Perez regularly worked a total of 65 hours for four weeks and 63 hours for two weeks. Huffman, Bennett, and Perez all worked together for Defendants in California. Defendants only ever paid Perez a total of $2,550.00. For his first three weeks of employment, Defendants owe Perez $4,425.00. His final three weeks hours that he was not paid for consisted of 120 regular hours and 71 overtime hours. His unpaid overtime and regular wages total $11,220.00. He is entitled to this amount liquidated, which is $22,440.00.

- Defendants willfully withheld Plaintiffs' compensation, including overtime wages, due to each Plaintiff and, as a consequence, Plaintiffs are entitled to liquidated damages for the three years prior to filing the original complaint.

- Plaintiffs are entitled to their reasonable attorney's fees, and the recorded hours of attorney's fees should be submitted to the Court with evidence from someone other than the attorney as to the reasonable hourly rates that are charged on Plaintiffs' case. After review, the Court will enter an order on attorney fees.

**IT IS THEREFORE ORDERED** that judgment shall be entered in Plaintiffs' favor for the foregoing amounts, together with post-judgment interest from the date of this judgment until paid as provided by law.

Dated:  April 23, 2015                             **s/ John L. Kane**
                                                   Senior U.S. District Judge